IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VALENTINO AMARO,                :         CIVIL ACTION
      Petitioner,              :
                       :
   v.                           :
                       :
KENNETH CAMERON, et al.,         :         NO.  09-343
      Respondents.             :

## REPORT AND RECOMMENDATION

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                          July    31, 2009

      Before the Court for Report and Recommendation is Valentino Amaro's (alternatively "Amaro" or "Petitioner") *pro se* petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  Amaro is currently incarcerated at the State Correctional Institute in Cresson, Pennsylvania.[1]  In his petition, he asserts claims under the Fourteenth, Fifth, and Sixth Amendments. For the reasons set forth below, we find that the claims are meritless and/or unexhausted, and recommend that the petition be dismissed.[2]

## I.    Factual and Procedural Background

      Petitioner entered into a negotiated guilty plea in the Court of Common Pleas of Montgomery County to charges of stalking, terroristic threats, and simple assault on October 12, 2006.  (Resp. at

---

   [1] Although SCI Cresson is located in Cambria County, which is in the Western District of Pennsylvania, *see* 28 U.S.C. § 118(c), venue here is proper in that Petitioner's current confinement grew out of a prosecution and conviction in Montgomery County.

   [2] In preparing this Report and Recommendation, we reviewed Amaro's form Petition for Writ of Habeas Corpus ("Pet."), the form Petition which he initially filed in the Western District of Pennsylvania ("W.D. Pa. Pet.") which we construe him to incorporate by reference here (*see* Pet. at 9), the District Attorney's Response to the Petition ("Resp."), and Amaro's "Motion to Reply in Opposition to the Respondent's Answer" (the "Reply") which we construe to in fact assert a substantive reply.  As necessary, we also consulted documents contained in the state court record received from the Montgomery County Office of Clerk of Courts.

2; Pet. at 4).  The charge stemmed from a domestic dispute between Amaro and his ex-girlfriend,

Georgina Yeboah.  On the night of August 25, 2005, upon returning to her home in West Norriton,

Montgomery County, Pennsylvania, Yeboah found Amaro hiding in her closet.  He then lunged at

her and, while holding a knife, grabbed her by the throat and told her to "shut the fuck up or I'll kill

you."  She eventually fled the house, and Petitioner was apprehended soon thereafter.[3]

Petitioner was sentenced on the date of his guilty plea to 1-2 years incarceration on the

stalking charge, and a consecutive term of 1-2 years incarceration on the terroristic threats charge.

(*Commonwealth v. Amaro*, NO. 6331-05, NO. 5814-05 (July 17, 2007) ("PCRA Op.")[4] at 1).  He

was sentenced to a concurrent term of 1 year's probation on the simple assault charge.  (PCRA Op.

at 1-2).  Petitioner did not pursue direct appeal of the judgment of sentence.  (PCRA Op. at 2).

On February 9, 2007, Petitioner filed a claim seeking relief under the Pennsylvania Post-

Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. §§ 9541-9546.  (PCRA Op. at 2).  Counsel was

appointed on February 23, 2007, and subsequently filed an amended petition.  (*See* PCRA Op. at 2).

The court then issued a Notice of Intention to Dismiss, to which Amaro filed a response in

opposition.  (*See* PCRA Op. at 2-3).  On May 9, 2007, the court entered an order dismissing the

petition.  (*See* PCRA Op. at 3).  This order was followed by a written opinion on July 17, 2007,

which rejected the claim that guilty plea counsel had been ineffective for allowing Petitioner to plead

guilty to the stalking charge which, Petitioner asserted, had been withdrawn.  (PCRA Op. at 1, 4).

---

[3] Petitioner does not provide a version of the facts.  Accordingly, we rely upon the facts as set out in the "Affidavit of Probable Cause" portion of the criminal complaint, attached in full as Exhibit "A" to the Response.

[4] A copy of the PCRA opinion is attached as Exhibit "B" to the Response.

2

Upon review of the PCRA court's decision, the Pennsylvania Superior Court reversed the dismissal on December 21, 2007. (*Commonwealth v. Amaro*, No. 1228 EDA 2007 (Dec. 21, 2007) ("Super. Ct. Op.")[5] at 1). The Commonwealth sought allowance of appeal with the Pennsylvania Supreme Court and, in a single page order dated November 25, 2008, the high court vacated the Superior Court's decision and reinstated the PCRA court's order dismissing Amaro's petition. (*Commonwealth v. Amaro*, No. 168 MAL 2008 (Nov. 25, 2008)).[6]

On December 8, 2008, Amaro filed a petition for writ of habeas corpus in the Western District of Pennsylvania.[7] (W.D. Pa. Pet. at 1). His petition was transferred to this district where, on February 9, 2009, he re-filed on the appropriate form.[8] We construe his petition to set out five grounds for relief: (1) a Fourteenth Amendment due process claim asserting that his guilty plea was "unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea" (Pet at 9);[9] (2) a Sixth Amendment claim alleging ineffectiveness of plea

---

[5] A copy of the Superior Court opinion is attached as Exhibit "C" to the Response.

[6] A copy of the Pennsylvania Supreme Court's order ("PA Supreme Ct. Order") is attached as Exhibit "D" to the Response.

[7] The date stamp on the front of that petition indicates that the Clerk's Office of that Court received the Petition for Writ of Habeas Corpus on December 18, 2008. However, following the prison mailbox rule, *see Burns v. Morton*, 134 F.3d 109 (3d Cir. 1998) *and* Rule 3(d) of the Rules Governing Section 2254 Cases in the United States District Courts, we construe the filing date as the date Petitioner hand-delivered the petition to prison officials for mailing. Petitioner's signature at the end of the petition indicates a date of December 8, 2007 (*see* W.D. Pa. Pet. at 9). For the sake of housekeeping, we accept this date as the date that this habeas action was filed.

[8] Once again applying the prison mailbox rule, we accept the February 9, 2009 date indicated by Petitioner's signature at the end of the petition as the date of his filing (*see* Pet. at 11).

[9] In the form petition filed in our district, Petitioner only asserts this first ground in

(continued...)

counsel for agreeing to a plea agreement upon the stalking charge which had allegedly been withdrawn (*see* W.D. Pa. Pet. at ¶ 13a. I.-IV); (3) a claim of a conspiracy between plea counsel and the prosecution to have Petitioner plead guilty to the withdrawn charge (*see* ¶ 13a. V.); (4) a claim of an "unconstitutional failure of the prosecution to disclose" certain unspecified "favorable" information (*see* ¶ 13a. VI.); (5) a Fifth Amendment claim of "violation of the protection of double jeopardy" (*see* ¶ 13a. "<u>Also Note:</u>").   The Montgomery County District Attorney's Office (the "District Attorney") filed a Response to the petition on May 4, 2009 (Doc. 8), asserting that it should be dismissed in that the claims raised are without merit.[10]   (Resp. at 6-13).  We agree.

## II.   Legal Standards

We begin by setting out the exhaustion requirement and the standard of review governing habeas petitions.

### A.____ Exhaustion of State Remedies, Procedural Default

Under the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), a prerequisite to the issuance of a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment is that the petitioner must have "exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  This exhaustion requirement is "grounded in concerns of comity" and federalism, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), and ensures that state

[9](...continued)
support of his claim.  In the "supporting facts" subsection to the single ground alleged, however, he makes reference to his "previous habeas filing" in which "[a]ll information was attached . . . as exhibits."  (Pet. at 9).  He further requests that the Court "please review the previous filed documents."  (Pet. at 9).  We construe him to incorporate by reference the previously filed petition, and we in turn construe him to allege the next four claims as grounds for relief.

[10] The District Attorney only addresses the ineffectiveness claim.  While we would have expected a more complete briefing, we nonetheless dispose of all the asserted claims.

courts have "an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights," *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981).   In order for a petitioner to satisfy this requirement and give the state courts "one full opportunity to resolve any constitutional issues," he must have fairly presented the merits of his federal claim to the state courts "by invoking one complete round of the State's established appellate review process."   *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971).

If a bypassed state remedy is no longer available due to a state procedural rule or limitation period, the petitioner will be deemed to have procedurally defaulted his claim.   *O'Sullivan*, 526 U.S. at 848.   A claim that is procedurally defaulted cannot provide a basis for federal habeas relief unless the petitioner can show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or [unless he] demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice."   *Coleman*, 501 U.S. at 750.   To establish cause, the petitioner must show "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."   *Murray v. Carrier*, 477 U.S. 478, 488 (1986).   To establish prejudice, the petitioner must show "actual prejudice resulting from the errors of which he complains."   *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (quotations omitted).

The fundamental miscarriage of justice exception requires that a petitioner provide "new reliable evidence" showing that "a constitutional violation has probably resulted in the conviction of one who is *actually innocent*."   *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995) (emphasis added and quotations omitted); *see also House v. Bell*, 547 U.S. 518, 537-39, 555-56 (2006); *Cristin v. Brennan*, 281 F.3d 404, 412 (3d Cir. 2002).   In other words, he must show "that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable

doubt--or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *House*, 547 U.S. at 538.

**B.      Standard for Issuance of the Writ**

In cases where the claim presented in a federal habeas petition was adjudicated on the merits in state court, the AEDPA requires that substantial deference be given to the state court's adjudication of the merits.  Specifically, relief shall not be granted unless the adjudication —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Our Supreme Court has made clear that a habeas writ may issue under the "contrary to" clause of Section 2254(d)(1) only if the "state court applies a rule different from the governing law set forth in [United States Supreme Court] cases, or if [the state court] decides a case differently than [the United States Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A writ may issue under the "unreasonable application" clause only where there has been a correct identification of a legal principle from the Supreme Court but the state court "unreasonably applies it to the facts of the particular case." *Id.*  This requires the petitioner to demonstrate that the state court's analysis was "objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

6

III.     **Discussion**

A._____**Claim (1): Fourteenth Amendment Involuntary Guilty Plea**

By this claim, Petitioner asserts that his conviction was "obtained by [a] plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea." (Pet. at 9). We presume, based upon the general substance of the remainder of his claims which object primarily to the stalking charge to which he pled guilty but which, he alleges, had been withdrawn by the Commonwealth, that he means to assert by this claim that he did not plea guilty voluntarily or with the requisite understanding of the stalking charge brought against him. We do not believe, however, that Petitioner has properly exhausted this claim in the state courts, causing it to be procedurally defaulted.

Our examination of the state court record reveals that Petitioner never raised this particular claim, in its current form, such as to have submitted it before the full round of the state court appellate process. Indeed, he never raised, and the PCRA court in its opinion rejecting the petition never addressed, such a claim in his counseled "Amended Post Conviction Relief Act Petition" and his subsequent "Answer to Notice to Dismiss [Amaro's] PCRA Petition Without a Hearing." Petitioner, rather, in those filings, relied exclusively as his ground for relief upon his assertion that plea counsel had been ineffective in failing to move to quash the stalking charge, which had allegedly been withdrawn, and to which Petitioner eventually plead guilty.[11] While we do not have the benefit of the briefs Petitioner filed with the Superior Court, review of that court's opinion makes

_____

[11] Indeed, the PCRA court expressly noted that Amaro "made no showing – *nor even claimed* – that [the] alleged 'clerical error' rendered his guilty plea to the charge of stalking 'involuntary.'" (PCRA Op. at 10 (emphasis added)).

7

clear that it did not construe Petitioner to raise such a claim.  (*See* Super. Ct. Op. at 3).[12]  As such, he has failed to invoke the requisite "one complete round of the State's established appellate review process" necessary to have exhausted this claim.  *O'Sullivan*, 526 U.S. at 845.  The claim is thus now procedurally defaulted.  *See Coleman*, 501 U.S. at 750.[13]

Petitioner does not assert any "cause" such as to excuse the failure, and provides no "new reliable evidence" showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent" such as to demonstrate a fundamental miscarriage of justice. *Schlup*, 513 U.S. at 324, 327.  Thus, this unexhausted claim remains procedurally defaulted and does not provide Amaro with a basis for habeas relief.

Notwithstanding this failure to exhaust, the claim may alternatively be rejected on its merits. *See* 28 U.S.C. § 2254(b)(2) ("application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Our Supreme Court has made clear that a defendant's guilty plea constitutes a waiver of significant constitutional rights, and thus "not only must be voluntary[,] but must be [a] knowing, intelligent act[] done with sufficient awareness of the relevant circumstances and likely

---

[12] The Superior Court construed Petitioner to assert two claims: "(1) that the magistrate 'erred in making a transcript [that held] defendant for court on a charge of stalking when clearly the charge was withdrawn by the affiant and no other charge of stalking existed on the criminal complaint[,]' and (2) that plea counsel was ineffective for failing to allow him to so plead." (Super. Ct. Op. at 3 (quoting Amaro's brief at 11-12)).

[13] Petitioner would be precluded from now exhausting this claim in state court by the PCRA's one year statute of limitations, which also bars successive petitions not also filed within the same one year period.  *See* 42 Pa.C.S. § 9545(b)(1); *see also Whitney v. Horn*, 280 F.3d 240, 251 (3d Cir. 2002) (finding one year PCRA limitations period to be "a jurisdictional rule that precludes consideration of the merits of any untimely PCRA petition, and it is strictly enforced in all cases").

consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970).  To ensure that a defendant's guilty plea satisfies this standard, the trial court "is best advised" to conduct a thorough colloquy upon the record "which should include, *inter alia*, an attempt to satisfy itself that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and the permissible range of sentences." *Boykin v. Alabama*, 395 U.S. 239, 244 n. 7 (1969); *see also Jamison v. Klem*, 544 F.3d 266, 272 (3d Cir. 2008) (quoting same).

Our review of the notes of testimony from Petitioner's October 12, 2006 guilty plea (contained in the state court record) makes plain that these standards were met.  The relevant terms of the guilty plea were set out as follows:

> [PROSECUTION]: The docket number is 6331-05. The Defendant's name is Valentino Amaro, and the proposed recommendation is as follows. [Amaro] would plead guilty to stalking, .7, count one.  The Commonwealth would recommend one to two years, state correctional institution, the imposition of costs.  And that sentence would be effective 8/26/2005.
> . . .
> THE COURT: And that's your understanding, Mr. Amaro?
>
> THE DEFENDANT: It is now.  Yes, sir.  Yes, Your Honor.
>
> THE COURT: Okay.  All right.  I'm certainly prepared to accept that plea agreement.

(N.T. 10/12/06 at 3-4).

The Court, with the assistance of Petitioner's appointed counsel, then engaged Petitioner in a thorough, on the record colloquy "in order for the Court to accept [Amaro's] guilty plea as knowing, intelligent and voluntary," (N.T. 10/12/06 at 8):

> Q.  Are you presently under the influence of any medication?

9

A.  None.

Q.  Are you being treated for any kind of psychiatric disorder?

A.  No.

Q.  Are you thinking clearly today?

Q.  Yes.

Q.  Okay.  Do you understand that you are in court today pleading guilty to two separate criminal files?

A.  Yes, I do.

Q.  Okay.  On the other file, 6331-05, you are admitting the charge of stalking, which alleges that on or about August 25th, 2005, while there was a stay away from Ms. Yeboah's residence, you engaged in conduct - - went to her property and placed her in reasonable fear of bodily injury.  Do you understand those are the elements of that offense?

A.  Yes.

Q.  And also, the charge of terroristic threats, which emanates from using the words, you know, "Shut up or I'll kill you,"or, "I'm going to kill you," that those words were meant to terrorize Ms. Yeboah at the time of this incident.  Do you understand?

A.  Yes.
. . .
Q.  Okay Mr. Amaro, has anybody forced, threatened or coerced you in any way to get you to plead guilty to this offense?

A.  No.

Q.  Whose decision is it?

A.  Mine.
. . .

> Q.  I have in my hand what I marked D-1, the Guilty Plea.[14]  Mr. Amaro, you and I reviewed this this morning.
>
> A.  Yes.
>
> Q.  You understood it?
>
> A.  Yes.
> . . .
> Q.  And you had enough time to talk with me before deciding whether to accept the plea agreement or take the case to trial?
>
> A.  Yes.
>
> Q.  Okay.  Do you have any questions about anything to address to myself, the Court?
>
> A.  No.  I think I understand fully.
>
> Q.  You understand everything?
>
> A.  Yes.

(N.T. 10/12/06 at 10-11, 17-19).[15]  The trial court thus concluded that Petitioner's guilty plea was in fact knowing, intelligent and voluntary.  (N.T. 10/12/06 at 21).

Petitioner, in support of his claim, provides no argument that might serve to demonstrate that the trial court's conclusion that his guilty plea was in fact knowing, intelligent and voluntary constituted an objectively unreasonable application of the relevant federal law.  Upon independent

---

[14] A copy of the eight page, written guilty plea is contained in the state court record.  It is initialed on each page and signed by Petitioner, and contains a detailed checklist of the rights he was waiving by pleading guilty.  The document plainly supports the trial court's determination that the plea was knowing, intelligent and voluntary.

[15] During the colloquy, Petitioner was likewise informed of both the maximum potential sentences associated with the crimes to which he was pleading guilty and the actual sentence which he was to receive (N.T. 10/12/06 at 11-17), as well as the presumption of innocence, his right to be tried, his right to participate in jury selection, the Commonwealth's burden of proof, and the right to cross-examine witnesses (N.T. 10/12/06 at 17-18).

11

review, we believe the notes from the oral colloquy plainly demonstrate that Petitioner "[understood] the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he [was] charged and the permissible range of sentences." *Boykin*, 395 U.S. at 244 n. 7. We are thus satisfied that Petitioner's guilty plea was indeed a "knowing, intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences," *Brady*, 397 U.S. at 748, and, more pertinently, that the trial court's conclusion to the same effect was a plainly reasonable application of federal law. We thus alternatively recommend that this unexhausted and procedurally defaulted claim be dismissed on its merits.

**B.     Claim (2): Sixth Amendment Ineffectiveness of Guilty Plea Counsel**

By this claim, Petitioner asserts that guilty plea counsel was ineffective for "unlawfully allowing [him] to enter a guilty plea to Stalking, when in fact that charge was WITHDRAWN at the preliminary hearing on 9/7/05." (W.D. Pet. at ¶ 13a."<u>Also Note</u>:" (emphasis in original); *see also* Reply at ¶ VI.)). Petitioner asserts that guilty plea counsel "should have clearly reviewed his file, consulted with his client[,] and noted that the [stalking] charge was WITHDRAWN at the preliminary hearing . . . by [police detective] L.J. Kelly." (W.D. Pet. at ¶ 13a.II. (emphasis in original)). The District Attorney, on the other hand, asserts that Petitioner is unable to demonstrate that guilty plea counsel was constitutionally ineffective and that the state courts' determination that counsel was not constitutionally ineffective was objectively unreasonable, and that the claim should be dismissed. (Resp. at 6-12). We agree.

In *Strickland v. Washington*, 466 U.S. 668 (1994), our Supreme Court set out the test that a petitioner must satisfy before a court may find that counsel failed to provide effective assistance under the Sixth Amendment. Under the two-prong *Strickland* test, a petitioner must show: (1) that

12

his attorney's representation fell well below an objective standard of reasonableness; and (2) that there exists a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different.[16]  466 U.S. at 688-96.

To satisfy the first prong of the *Strickland* test, a petitioner must demonstrate that counsel was ineffective, and specifically that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  At this step, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  It is, of course, self-evident that counsel cannot be ineffective for failing to pursue meritless claims or objections. *Johnson v. Tennis*, 549 F.3d 296, 303 (3d. Cir. 2008) (citing *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999)).

To satisfy the second prong of the *Strickland* test, a petitioner must demonstrate prejudice, and specifically that there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different. *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id.*

Addressing this ineffectiveness claim at the state court level, the PCRA court noted, first, that Petitioner's claim had evolved from an assertion that he had never plead guilty to stalking to begin

---

[16] This same standard has been incorporated by the Pennsylvania courts as the proper basis to consider challenges for ineffective assistance of counsel under the Pennsylvania constitution. *See Commonwealth v. Pierce*, 527 A.2d 973, 976 (Pa. 1987) (stating that Pennsylvania courts apply elements of *Strickland* test to ineffective assistance of counsel claims). A Pennsylvania court's resolution of an ineffective assistance claim, therefore, is presumed to apply clearly established federal law and is due the substantial deference required by 28 U.S.C. § 2254(d). *See, e.g., Munoz v. Palakovich*, Civ. A. No. 05-4199, 2006 U.S. Dist. LEXIS 96657, *11 (E.D. Pa. Nov. 20, 2006), *approved and adopted* 2007 U.S. Dist. LEXIS 58516 (E.D. Pa., Aug. 9, 2007).  This leaves us only to determine whether the Pennsylvania Superior Court unreasonably applied the *Strickland* standard to Petitioner's claims or otherwise based its decision upon an unreasonable factual determination.

with, to an assertion that while he had plead guilty to stalking, that charge had not been properly held

for court, to a final assertion that while the charge had indeed been held for court, it had resulted

from a clerical error.  (PCRA Op. at 4 n. 7).  Specifically, Petitioner asserted that while a transcript

of preliminary proceedings[17] indicated that "an F3 charge of stalking [had been] withdrawn and an

M1 charge of stalking [had been] held for court. . . .[,] inspection of the criminal complaint

demonstrates that [the] inclusion of the M1 charge resulted from clerical error." (PCRA Op. at 5).

Plea counsel was ineffective, Petitioner asserted, for failing to file a motion to quash that stalking

charge and for allowing Petitioner to have pled guilty to it.  (PCRA Op. at 3-4).

The court rejected Petitioner's assertion of clerical error and explained, in pertinent part:

> The complaint[18] was prepared by Detective Luke J. Kelly, III,
> of the West-Norriton Township Police Department.  It contains an
> affidavit of probable cause detailing [Amaro's] alleged misdeeds
> against his ex-girlfriend on August 25, 2005, and reciting [Amaro's]
> recent history of incidents involving the victim.  The complaint also
> contains a list of citations to the criminal statutes Detective Kelly
> believed that [Amaro] had violated.
>
> [Amaro] correctly notes that a line had been drawn through
> Detective Kelly's citation to the stalking statute, 18 Pa.C.S.A.
> §2709.1.  That citation reads: "2709.1a1.2  Stalking  F3." This is
> followed by a handwritten notation reading: "Withdrawn 9/7/05," and
> what appear to be Detective Kelly's initials.  This is fully consistent
> with [preliminary hearing] Judge Casillo's notation on the transcript
> that an F3 stalking charge had been withdrawn.  [Amaro's]
> speculation that the inclusion of the M1 stalking charge on the
> transcript must have resulted from clerical error appears to arise from
> a belief by [Amaro] that, in order for the M1 charge to be held for
> court, Detective Kelly was required to write another citation to
> §2709.1 on the complaint, this time specifying that [Amaro] was
> being charged with M1 stalking, after he struck the citation to the F3

---

[17]  Our review of the record fails to disclose any portion of this "transcript of preliminary proceedings."  This circumstance, however, does not impact upon our determination.

[18]  We again note that a copy of the complaint is attached as Exhibit "A" to the Response.

charge.

(PCRA Op. at 5).  In that belief, and as a matter of state law, the court concluded, Amaro was "simply mistaken."  (PCRA Op. at 5).

The court explained that the pertinent state court criminal rules did not require the Commonwealth to provide within the criminal complaint "*any* citations to any specific statute allegedly violated," let alone require that the Commonwealth write another citation to §2709.1, as Petitioner had asserted.  (PCRA Op. at 6 (emphasis in original)).  Indeed, by its plain terms, Pa.R.Crim.P. 504(6)(a) expressly provides that "neither the evidence nor the statute allegedly violated need be cited in the complaint."  (PCRA Op. at 6).  Under Pa.R.Crim.P. 504(6)(a), rather, all that is required to be contained within the criminal complaint is "a summary of the facts sufficient to advise the defendant of the nature of the offense charged."  (PCRA Op. at 6).  The court concluded that "the summary of facts provided by Detective Kelly in the complaint was sufficient to support an M1 charge of stalking," and that the record not only belied Petitioner's assertion of clerical error, but made clear "that an F3 charge of stalking [had been] withdrawn, and an M1 charge of stalking substituted, to which [Amaro] ultimately pled guilty."  (PCRA Op. at 6).  The assertion of clerical error, therefore, "lack[ed] arguable merit."  (PCRA Op. at 4).

The court likewise concluded that, even if the stalking charge had been brought to court as the result of a clerical error, the charge still would still have been properly brought under Pa.R.Crim.P. 560(B)(5), which provides that a charge is proper where it contains "[a] plain and concise statement of the essential elements of the offense substantially the same *or cognate to the offense alleged in the complaint*."  (PCRA Op. at 6 (emphasis in original)).  The court noted, in this respect, that in addition to the charges to which he had pled guilty, Petitioner had been charged with

15

harassment in both the criminal complaint and in the preliminary transcript, and did not dispute the legitimacy of that charge.  (PCRA Op. at 7).  The court concluded that the stalking charge to which Petitioner had ultimately pled guilty was an offense cognate to the charge of harassment, and was thus properly brought pursuant to Pa.R.Crim.P. 560(B)(5).  (PCRA Op. at 7).  As such, the court concluded, any challenge from counsel to the stalking charge "would have been without merit, and [counsel could] not be found ineffective for having 'failed' to raise it."  (PCRA Op. at 8).[19]

Petitioner, without referencing the state courts' disposition of this claim, nonetheless argues that, as a matter of state law, the stalking charge had been withdrawn and that the Commonwealth did not follow the proper state criminal law procedures before reinitiating the charge.  (*See* W.D. Pa. Pet. at ¶ "Footnote:" & Reply at ¶ I.-II. (citing *Liciaga v. Court of Common Pleas*, 566 A.2d 246, 248 (Pa. 1989) and Pa.R.Crim.P. 544(A))).  He argues that counsel was ineffective for allowing him to plead guilty to it.  It is well-established, however, that "federal habeas corpus relief does not lie for errors of state law" and that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citations and quotations omitted).  A habeas court, rather, "is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States."  *Id.*  We are in no position, therefore,

---

[19] The Superior Court reversed, concluding, first, that the misdemeanor stalking charge had indeed been withdrawn at the initial proceeding.  (Super. Ct. Op. at 7).  The court concluded, second, that upon the eventual holding of this charge for trial, "plea counsel was ineffective by failing to identify this procedural misstep and allowing (counseling) [Amaro] to enter a guilty plea to stalking."  (Super. Ct. Op. at 7).

The Pennsylvania Supreme Court, however, vacated the Superior Court's decision and reinstated "the PCRA Court's Order dismissing Petitioner's PCRA petition"  (PA Supreme Ct. Order).  Given the court's reinstatement of the PCRA court's order, our discussion as to whether the rejection of this claim was a reasonable application of federal law focuses exclusively upon the reasoning and rationale provided by the PCRA court.

to consider whether the PCRA court properly applied  Pa.R.Crim.P. 504(6)(a) in holding that the stalking charge had not, in fact, been withdrawn.  We are likewise in no position to consider whether the court properly applied Pa.R.Crim.P. 560(B)(5) in holding that even if the stalking charge had been withdrawn, the state would nonetheless have allowed to bring the charge to court against him.  In short, we are bound to accept those determinations.  In any event, review of both the pertinent state court documents and Petitioner's legal citations gives us no reason to doubt the propriety of those determinations.

Our acceptance of the PCRA court's conclusion that any underlying challenge to the the stalking charge would have lacked merit leaves Petitioner unable to show that he suffered prejudice as a result of counsel's failure to object to it.  Petitioner thus fails the second prong of the *Strickland* standard, 466 U.S. at 694, and, in that counsel cannot be presumed to act unreasonably in failing to raise a meritless claim, *see Johnson*, 549 F.3d at 303, he likewise fails the first prong of the *Strickland* standard, 466 U.S. at 687.  Accordingly, we recommend that this ineffectiveness claim be dismissed.[20]

**C.____Claim (3): Conspiracy Between Plea Counsel and Prosecution**

By this claim, Petitioner cryptically asserts that "[g]uilty plea counsel conspired with the prosecution, for allowing [sic] [him] to plead guilty to a charge of Stalking when clearly the charge was WITHDRAWN at the preliminary hearing, signed by L.J. Kelly, a police officer who represents

---

[20] In *Commonwealth v. Lynch*, the lone case cited touching upon ineffectiveness issues, the Superior Court acknowledged that relief would lie where "the ineffective assistance of counsel caused the defendant to enter an involuntary or unknowing plea," and that a petitioner would be required to "prove that he was unlawfully induced to plead guilty and that he is innocent."  820 A.2d 728, 732 (Pa. Super. Ct. 2003).  We have no reason to doubt this proposition.  It does not, however, cause us any pause in recommending that this claim be dismissed.

the Commonwealth[,] on 9/7/05.  OR conspiracy to prosecute for a crime that never occurred [sic]."
(W.D. Pa. Pet. at ¶ 13a.V.; *see also* Reply at ¶ IV.).   Our examination of the state court record,
however, reveals that, as with his first claim, Petitioner never raised this claim before the state
courts.  (*See supra* at 7-8).  As such, he has failed to invoke the requisite "one complete round of the
State's established appellate review process" necessary to have exhausted this claim.  *O'Sullivan*,
526 U.S. at 845.  In that Petitioner would be precluded from now exhausting this claim in state court
by the PCRA's one year statute of limitations, *see* 42 Pa.C.S. § 9545(b)(1) & *Whitney*, 280 F.3d at
251, it is procedurally defaulted.  *See Coleman*, 501 U.S. at 750.  Petitioner does not assert any
"cause" such as to excuse the failure, and provides no "new reliable evidence" showing that "a
constitutional violation has probably resulted in the conviction of one who is actually innocent" such
as to demonstrate a fundamental miscarriage of justice.  *Schlup*, 513 U.S. at 324, 327.  As such, this
unexhausted, procedurally defaulted claim does not provide Amaro with a basis for habeas relief.

Notwithstanding this failure to exhaust, the claim may alternatively be rejected on its merits.
Aside from the bare allegation of the existence of some conspiracy, Petitioner fails to set out a single
fact in support the existence of any such conspiracy.  While we must give a liberal reading to a *pro
se* litigant's pleadings, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), it is not the job of a habeas
court to comb the record and sift for facts that may exist to support a bare allegation and then engage
in an effort to construct a potential claim on his behalf.  It is Petitioner's burden, rather, to provide
"the facts supporting each ground."  *See* Rule 2(c) of the Rules Governing Section 2254 Cases in the
United States District Courts.  He fails to do so.[21]  Similarly, he cites no legal propositions which

---

[21] Independent review nonetheless satisfies us that the record is bereft of facts evidencing
any conspiracy that might support Petitioner's otherwise bare allegation.

might otherwise illuminate or support this claim.[22]  We thus alternatively recommend that this unexhausted, procedurally defaulted claim be dismissed on its merits.

### D.____Claim (4): Failure to Disclose "Information Favorable" to Petitioner

By this claim, Petitioner asserts that his guilty plea was "obtained by the unconstitutional failure of the prosecution to disclose this information favorable to [him] violates" his Fourteenth Amendment right to due process.  (W.D. Pa. Pet. at ¶ 13a.VI.).  As with claims (1) and (3), however, Petitioner never raised this claim before the state courts (s*ee supra* at 7-8), and has thus failed to invoke the requisite "one complete round of the State's established appellate review process" necessary to have exhausted this claim and, for the same reasons, it is now procedurally defaulted. *See O'Sullivan*, 526 U.S. at 845 & *Coleman*, 501 U.S. at 750.  As with those claims, Petitioner does not assert any "cause" such as to excuse the failure, and provides no "new reliable evidence" showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent" such as to demonstrate a fundamental miscarriage of justice.  *Schlup*, 513 U.S. at 324, 327.  As such, this unexhausted, procedurally defaulted claim does not provide Amaro with a basis for habeas relief.

Notwithstanding this failure to exhaust, the claim may alternatively be rejected on its merits. Our Supreme Court has made clear that "the suppression by the prosecution of evidence favorable to an accused" violates due process.  *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *Brady*

---

[22] In purported support of this claim, Petitioner cites *Rachuy v. Murphy Motor Freight Lines, Inc.*, 663 F.2d 57 (8th Cir. 1981).  There, the Eighth Circuit affirmed the dismissal of the plaintiff's civil rights action which alleged "that the defendants conspired to deprive him of his rights by charging him with a crime that had not occurred, failing to disclose evidence favorable to him and fabricating evidence against him," and had been brought under 42 U.S.C. §§ 1983 and 1985.  *Id.* at 58.  Other than the mirroring of the "conspired" and "crime that had not occurred" language (*compare id. with* W.D. Pa. Pet. at ¶ 13a.V.), the case is inapposite on its face.

*v. Maryland*, 373 U.S. 83, 87 (1963) and citing *United States v. Agurs*, 427 U.S. 97, 107 (1976)).

Aside from the bare allegation of a failure to disclose information, however, Petitioner fails to set

out a single fact in support the claim, let alone the substance of the allegedly "favorable"

information.  As such, he fails to fulfill his burden of providing "the facts supporting each ground."

*See* Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts.  Nor

does he cite any legal propositions which might otherwise illuminate or support this claim.[23]  To the

extent that Petitioner might be read to assert that the alleged "withdrawal" of the stalking charge

constituted the "favorable" information, our acceptance of the PCRA court's conclusion that the

charge had not in fact been withdrawn would dictate that we reject the assertion.  We thus

alternatively recommend that this unexhausted, procedurally defaulted claim be dismissed on its

merits.

  **E.  Claim (5): Fifth Amendment Double Jeopardy**

   By this claim, Petitioner asserts that his "conviction was obtained by a violation of the

protection of double jeopardy" provided in the Fifth Amendment.  (W.D. Pa. Pet. at ¶ 13a. "Also

Note:"; *see also* Reply at ¶ III.).  As with claims (1), (3) and (4), however, Petitioner did not properly

raise this claim before the state courts[24] (*see supra* at 7-8), and has thus failed to invoke the requisite

---

  [23] In purported support of this claim, Petitioner, somewhat incoherently, asserts: "In making allegations that a prosecutor knowingly-offered, used or presented false, misleading or perjured testimony at trial or before a grand jury,- does not defeat absolute prosecutorial immunity, regardless of how reprehensible such conduct would be if it occurred [sic]."  (W.D. Pa. Pet. at ¶ 13a.VI.).  Petitioner cites two cases in support of that assertion: *Imbler v. Pachtman*, 424 U.S. 409 (1976) and *Jones v. Shankland*, 800 F.2d 77 (6th Cir. 1986).  Both upheld dismissals of claims brought under 42 U.S.C. § 1983 on the basis of prosecutorial immunity.  *See Imbler*, 424 U.S. at 410; *Shankland*, 800 F.2d at 80.  Neither sheds any light on Petitioner's present habeas claim.

  [24] We note that Petitioner appears to have, in fact, raised this claim in his "Application for

(continued...)

"one complete round of the State's established appellate review process" necessary to have

exhausted this claim and, for the same reasons, it is now procedurally defaulted.  *See O'Sullivan*, 526

U.S. at 845 & *Coleman*, 501 U.S. at 750.  As with those claims, Petitioner does not assert any

"cause" such as to excuse the failure, and provides no "new reliable evidence" showing that "a

constitutional violation has probably resulted in the conviction of one who is actually innocent" such

as to demonstrate a fundamental miscarriage of justice.  *Schlup*, 513 U.S. at 324, 327.  As such, this

unexhausted, procedurally defaulted claim does not provide Amaro with a basis for habeas relief.

     Notwithstanding this failure to exhaust, the claim may alternatively be rejected on its merits.

Our Supreme Court has made clear that the Double Jeopardy clause "affords a defendant three basic

protections:"

> "'[It] protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense.'"  *Brown v. Ohio*, 432 U.S. 161, 165 (1977), quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).
> 
> As we have explained on numerous occasions, the bar to retrial following acquittal or conviction ensures that the State does not make repeated attempts to convict an individual, thereby exposing him to continued embarrassment, anxiety, and expense, while increasing the risk of an erroneous conviction or an impermissibly enhanced sentence.  *See, e. g., United States v. Wilson*, 420 U.S. 332, 343 (1975); *Green v. United States*, 355 U.S. 184, 187-188 (1957).

*Ohio v. Johnson*, 467 U.S. 493, 498-99 (1984).

     Petitioner does not specify the nature of his claim or the facts in support, beyond the bare

---

[24](...continued)

Reconsideration" to the Pennsylvania Supreme Court (*see* W.D.Pa. Pet. at Ex. (I), ¶ V.).  A claim submitted for the first time to a state's highest court on discretionary review is not "fairly presented" for purposes of exhaustion.  *Castille v. Peoples*, 489 U.S. 346, 351 (1989).  As such, this claim remains unexhausted.

allegation.  As such, he fails to fulfill his burden of providing "the facts supporting each ground."  *See* Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts.  We might assume, *arguendo*, that Petitioner intended to argue that the police detective's crossing out the stalking charge and writing the notation "withdrawn" next to it constituted a first "jeopardy" for that offense, and that the subsequent re-entry of that charge constituted an unconstitutional second "jeopardy."  We would reject that argument, however, for there is no support to be found for the proposition that, under *Johnson*'s terms, the initial listing of the charge constituted a "prosecution" and that the cross out and "withdrawn" notation constituted an acquittal, such as to have triggered the first of the three protections provided within the Double Jeopardy clause.[25]  We thus alternatively recommend that this unexhausted, procedurally defaulted claim be dismissed on its merits.

## IV.    Certificate of Appealability

Pursuant to Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit, at the time a final order denying a habeas petition is issued, the district judge is required to make a determination as to whether a certificate of appealability ("COA") should issue.  Under 28 U.S.C. § 2253(c)(2), a habeas court may not issue a COA unless "the applicant has made a substantial showing of the denial of a constitutional right."  When a federal court rejects a petitioner's constitutional claims as procedurally defective, a COA is not warranted unless the petitioner demonstrates that jurists of reason would find debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the district court was correct in

---

[25] Indeed, in one of the very cases cited by Petitioner, the Pennsylvania Supreme Court observed that the United States Supreme Court "has consistently adhered to the view that jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is 'put to trial before the trier of facts, whether the trier be a jury or a judge.'"  *Liciaga*, 566 A.2d at 265 (quoting *Serfass v. United States*, 420 U.S. 377, 387-88 (1975)).

its procedural ruling.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); 28 U.S.C. § 2253(c).  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  *Slack*, 529 U.S. at 484.

When a federal court rejects a petitioner's constitutional claims on the merits, "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  In other words, the petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Id.* (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

Here, for the reasons set forth above and in light of the clear authorities discussed above, we do not believe a reasonable jurist would conclude that the Court incorrectly denied the present petition.  Accordingly, a COA should not issue.

Our recommendation follows.

**V.      Recommendation**

**AND NOW** this   31st      day of July, 2009, it is respectfully **RECOMMENDED** that the

petition for a writ of habeas corpus be **DISMISSED**.  It is **FURTHER RECOMMENDED** that a

COA should **NOT ISSUE** in that we do not believe that Petitioner has made a substantial showing

of the denial of a constitutional right or that a reasonable jurist would debate the correctness of this

ruling.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

The petitioner may file objections to this Report and Recommendation.  *See*  Local Civ. Rule

72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:


/s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE

24